UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MIGUEL LOPEZ, *individually and on behalf*
*of others similarly situated*,

                Plaintiffs,

      -against-

ANGELITO GUZMAN, ANGELITO AUTO
REPAIR,

              Defendants.
-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
17 CV 1668 (ARR) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

      On March 25, 2017, Miguel A. Lopez ("plaintiff"), individually and on behalf of others

similarly situated, commenced this action against Angelitos Auto Repair Inc. ("Angelitos") and

Mr. Angelito Guzman ("Guzman") (collectively, "defendants"), alleging that defendants failed to

pay proper overtime and spread-of-hours wages pursuant to the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201, et seq., and the New York Labor Law ("NYLL") §§ 190 and 650, et

seq.  Currently pending before this Court is plaintiff's motion for default judgment.

PROCEDURAL BACKGROUND

      On June 13, 2017, the Clerk of the Court entered a default in this matter, and on July 3,

2017, plaintiff filed a motion for default judgment, which was referred to the undersigned on

July 5, 2017.  However, on June 8, 2018, following a report and recommendation from the

undersigned, the district court granted defendants' unopposed motion to vacate the default.

Defendants thereafter filed their answer and attended the initial conference on July 26, 2018.

However, just a few months later, in November 2018, defense counsel, Mr. Moghadassi, filed a

request to withdraw.  That motion by defense counsel was granted in December 2018.

Defendants retained new counsel, Ralph Gerstein, Esq., in January 2019.  However, on

August 22, 2019, Ralph Gerstein, counsel of record for defendants Angelito's Auto Repair Inc.

and Mr. Angelito Guzman (collectively, "defendants"), filed a motion seeking to be relieved as

counsel for defendants,[1] in part, due to defendants' failure to cooperate with counsel on this

matter.  At that point, the Court had given defendants numerous opportunities to either respond

to Mr. Gerstein's motion or, in the alternative, obtain new counsel.[2]  Eventually, on November

21, 2019, the Court held a hearing on Mr. Gerstein's motion to withdraw as counsel.  Once

again, defendants failed to appear and they did not obtain new counsel.  On November 22, 2019,

the Court granted Mr. Gerstein's motion and gave defendants additional time to find new

counsel.  Defendants were notified that the Court would recommend a default enter if defendants

failed to appear.

On December 4, 2019, Mr. Angelito Guzman sent a letter to the Court indicating that

defendants were in discussions with a law firm regarding representation.[3]  Defendants requested

additional time to hire counsel.  By letter dated December 6, 2019, plaintiff stated that they

strongly opposed giving defendants additional time to hire counsel, and requested that the Court

find defendants in default.[4]

The Court warned that the corporate defendant, Angelito's Auto Repair, Inc., had until

December 23, 2019 to hire new counsel and that plaintiff could seek entry of a default against the

corporate defendant if the corporate defendant failed to hire new counsel, but notified the parties

that the case could continue as to Mr. Angelito Guzman in his individual capacity whether or not

---

[1] ECF No. 68.

[2] ECF Nos. 70 & 72.

[3] ECF No. 74.

[4] ECF No. 75.

new counsel was hired.  A status conference was held on January 15, 2020, at which Lina

Stillman, Esq. appeared for plaintiff and Mr. Angelito Guzman appeared *pro se*.  The Court

noted that the corporate defendant, Angelitos Auto Repair, Inc., was in default, and the case was

referred to the district judge as ready for trial on January 15, 2020.  Next, Mr. Guzman was

Ordered to complete his draft of the Pretrial Order by February 21, 2020, and the Joint Pretrial

Order was due by March 6, 2020.

Plaintiffs informed the Court that Mr. Guzman had not provided a draft of his portion of

the Joint Pretrial Order as directed, nor had he filed a request for an extension of time to do so.[5]

Thus, the Court warned that, if Mr. Guzman failed to submit his draft of the Joint Pretrial Order

by May 1, 2020, or failed to request an extension of time from the Court, the Court would

consider plaintiff's July 3, 2017 motion for default judgment.  Plaintiff was directed to apprise

Mr. Guzman of this Order.

Defendant Guzman did not request an extension of time, nor did he file a draft of the

Joint Pretrial Order.  Accordingly, on June 22, 2020, plaintiff requested the Court consider its

default judgment motion from July 3, 2017.

<u>DISCUSSION</u>

I.    <u>Default and Default Judgment</u>

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of

a default judgment.  <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993).  First,

the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on

the Clerk's record of the case.  <u>See</u> <u>id.</u>; <u>see also</u> Fed R. Civ. P. 55(a) (providing that "[w]hen a

party against whom a judgment for affirmative relief is sought has failed to plead or otherwise

---

[5] ECF No. 80.

defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b). The Clerk of the Court entered a default against defendants on June 13, 2017. However, this default was vacated by order of the district court on June 15, 2018. Under Rule 55(a) of the Federal Rules of Civil Procedure, courts retain the discretion to enter default judgment against a party for failure to "plead or otherwise defend." Fed. R. Civ. P. 55(a). The defendants here have failed to appear on numerous occasions over the course of many years, resulting in extensive delay and added expense. As such, the undersigned respectfully recommends that a default enter against both the corporate defendant, which cannot proceed *pro se*, and the individual defendant for repeatedly failing to appear.

As to plaintiff's motion for default judgment, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment.  See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

A party defaults when it "has failed to plead or otherwise defend" the case.  Fed. R. Civ. P. 55(a).  The Second Circuit has "embraced a broad understanding of the phrase 'otherwise defend.'"  City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 129 (2d Cir. 2011).  Indeed, a defendant may fail to defend by "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial," Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65, or by failing to comply with discovery orders or failing to appear for trial.  Guggenheim Cap., LLC v. Birnbaum, 722 F.3d 444, 454 (2d Cir. 2013) (citing Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 917-19 (3d Cir. 1992)).

In addition, courts consider the following factors in evaluating whether a default judgment is warranted under Rule 37:  (1) the party's history of noncompliance; (2) whether the party had sufficient time to comply; and (3) whether the party had received notice that further delays would result in dismissal.  Sony BMG Music Entertainment v. Thurmond, No. 06 CV 1230, 2009 WL 4110292, at *3 (E.D.N.Y. Nov. 24, 2009) (citing Hollingsworth v. City of N.Y., No. 95 CV 3738, 1997 WL 91286, at *2 (S.D.N.Y. Mar. 4, 1997)).

A.  Liability under the FLSA

To establish a claim under the FLSA, plaintiffs must prove the following:  (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiffs are 'employees' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  Edwards v. Cmty. Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found.  v. Sec. of Labor, 471 U.S. 290, 295 (1985)).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1); Edwards v. Cmty. Enters., Inc., 251 F. Supp. 2d at 1098.  An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association,

corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce. . . ."  29 U.S.C. § 206(a).

In the Complaint, plaintiff alleges that defendants are joint employers engaged in interstate commerce, operating a business that has a gross volume business of over $500,000, thus subjecting them to the requirements of the FLSA.  (Compl. ¶¶ 25-26, 30-33).  As for the individual defendant, plaintiff alleges defendant Guzman possesses operational control over defendant corporation, possesses an ownership interest in defendant corporation, and controls significant functions of defendant corporation.  (Id. ¶ 24).  It follows, therefore, that for purposes of this default, defendants qualify as "employers" under the FLSA, and because the Court finds no basis for exempting the employment relationship at issue from the FLSA provisions, plaintiff qualifies as "employees" under the FLSA.[6]

Moreover, plaintiff alleges in the Complaint that during the period of his employment, he regularly worked in excess of 40 hours per week; from approximately May 2015 until on or about January 20, 2017, plaintiff worked from approximately 8:00 a.m. until 6:00 p.m. or 7:00 p.m. six days a week, typically 60 hours per week.  (Compl. ¶¶ 39-40).  However, plaintiff alleges he was paid only $650 per week from May 2015 to August 2016, and only $700 per week from August 2016 to January 2017.  (Compl. ¶¶ 41-43).  Plaintiff allegedly received no posted notices or any statements regarding his wages as required by the FLSA and NYLL. (Compl. ¶ 44).

---

[6] See 29 U.S.C. § 213(a) setting forth the exemptions.

Thus, because this is a default, the Court accepts plaintiff's uncontested allegations as true, and respectfully recommends that plaintiff be deemed to have sufficiently set forth the necessary elements to state a claim under the FLSA.

B.  Liability under the NYLL

 Plaintiff alleges that defendants violated the NYLL.  Like the FLSA, the NYLL establishes certain minimum wage rates.  See 12 N.Y.C.R.R. § 142-2.2; see, e.g., Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003).  In addition, under the NYLL, an employer is required to provide "one hour's pay at the basic minimum hourly wage rate" on days in which the employee works a spread of hours greater than 10 hours ("spread of hours" wages). 12 N.Y.C.R.R. § 142-2.4(a).

To recover under the NYLL, plaintiff must prove that he is an "employee[]" and that the defendant is an "employer" as defined by the statute.  See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law.  See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").  Similarly, an employee is simply defined as "any individual employed or permitted to work by an employer in any occupation. . . ."  N.Y. Lab. Law § 651(5).

In this case, plaintiff's allegations that he was employed by defendants within the meaning of Section 190(2) of the NYLL (Compl. ¶¶ 27, 30), and that defendants willfully failed to pay minimum wages or overtime (id. ¶¶ 53, 57), suffice to establish a violation of the minimum wage and overtime requirements of the NYLL.

C. Plaintiff's Other Claims

In addition to his minimum wage claims, plaintiff raises a number of other claims under state and federal law, which when viewed within the totality of the allegations of the Complaint, state claims for unlawful wage deductions and wage notice violations. Specifically, the Complaint alleges that defendants violated the Wage Theft Prevention Act, NYLL §§ 195(1) and 195(3), in that plaintiff never received the notice required by Section 195(1)(a), which must be provided within ten business days of hiring, nor did he ever receive a statement containing the information required by Section 195(3). (Id. ¶¶ 55, 59-61; see also Mem. at 15[7]).

Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiff be deemed to have adequately alleged the elements necessary to state claims under the FLSA and New York Labor Law.

D. Default Determination

Based upon a review of the allegations in the Complaint, which are undisputed at this time, the Court finds that plaintiff has sufficiently established liability so as to warrant entry of a default judgment for the requested damages. See 29 U.S.C. § 207(a)(1).

Here, defendants have appeared in this case. There is no question they are aware of the action against them. However, for the last two years, and despite numerous Orders warning them that a default would enter if they failed to appear, defendants have not appeared and the corporate defendant has failed to find new counsel. At this point, the case has languished too long and the defendants have been provided every opportunity to participate but have failed to do

---

[7] Although the Complaint does not specifically include a claim under Section 195(3), the allegations in the Complaint are sufficient to establish liability and to put defendants on notice as to that claim and the related request for damages as sought in the Motion for Default Judgment. (See Mem. at 15; Compl. ¶ 15).

so.  In similar situations, default judgments have been entered in favor of the plaintiff.

In Sony BMG Music Entertainment v. Thurmond, for example, the defendant initially appeared but later failed to appear for a court-ordered conference.  2009 WL 4110292, at *3.  The court warned that failure to appear could result in default judgment and other sanctions.  (Id.)  The same is true here:  defendants have failed to appear for multiple court-ordered conferences and they have been warned, on numerous occasions, of the possible consequences – including default judgment – for failing to appear.  A default is willful "where a defendant 'received the complaint, the court's orders, [and] the notice of default judgment,' but does not respond, and does not show 'that his non-compliance was due to circumstances beyond his control.'"  Pinknews Media Grp. Ltd. v. Here Publ'g Inc., No. 19 CV 5609, 2021 WL 1199427, at *1 (S.D.N.Y. Mar. 30, 2021) (citing Guggenheim Cap., LLC v. Birnbaum, 722 F.3d at 455).  Here, the defendants' default is willful.  As such, under either Rule 37 or Rule 55, the Court respectfully recommends that a default judgment be entered against the defendants.

II.   Damages

Plaintiff requests backpay, liquidated damages, statutory damages for wage and notice violations, and attorney's fees and costs.

A.  Backpay

With respect to backpay, plaintiff's Complaint alleges that he worked 60 hours per work for a "straight salary" of $650.00 a week from May 2015 to August 2016, and $700 a week from August 2016 to January 2017.  (Mem.[8] at 12; Compl.[9] ¶ 42; Lopez Decl.[10] ¶¶ 10-13).  Plaintiff

---

[8] Citations to "Mem." refer to plaintiff's Memorandum of Law in Support of Default Judgment, ECF No. 11.

[9] Citations to "Compl." refer to the Complaint, filed on March 25, 2017, ECF No. 1.

[10] Citations to "Lopez Decl." refer to the Declaration of Miguel Lopez in Support of

contends that his hourly rate should be calculated by dividing those fixed rates of $650 and $700 by 40 hours per week, which results in an hourly rate of $16.25 per hour from May 2015 to August 2016 and an hourly rate of $17.50 per hour from August 2016 to January 2017.  (See Pl.'s Damages Calculation, ECF No. 13-5).  That means his overtime rate would be $24.38 per hour and $26.25 per hour, respectively.  (Id.)  As such, plaintiff calculated that he was underpaid by $487.50 per week from May 2015 through August 15, 2016.  Plaintiff also claims that from August 17, 2016 to approximately January 2017, when he was paid a salary of $700.00 per week, he was underpaid by $525.00 per week.  (See Franco Decl., Pl.'s Damages Calculation, ECF No. 13-5).  Thus, according to plaintiff, in total, he is owed $44,737.50 in unpaid minimum and overtime wages.  (Mem. at 12; Damages Calculation, ECF No. 13-5).

"Under the FLSA, the 'regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked . . . '" Pineda v. Frisolino, Inc., No. 15 CV 3774, 2017 WL 3835882, at *10 (S.D.N.Y. Aug. 29, 2017) (quoting 29 C.F.R. § 788.109).  Under the NYLL, the regular rate is calculated "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the *lesser* of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5 (emphasis added).  "In actions to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, Plaintiffs may recover under whichever statute provides the greater relief." Pineda v. Frisolino, 2017 WL 3835882, at *11 (citations omitted).

Here, the NYLL allows for the greater recovery because Lopez's regular rate of pay will be determined by dividing his weekly wage by forty hours, rather than by the 60 hours he

---

Plaintiff's Motion for Default Judgment, ECF No. 12.

actually worked each week.  <u>Yu Wei Cao v. Miyama, Inc.</u>, No. 15 CV 266, 2019 WL 4279407, at *9 (E.D.N.Y. Sept. 10, 2019).  As such, plaintiff's calculations are correct that his regular hourly rate was $16.25 per hour and $17.50 per hour and his overtime rate was $24.38 per hour and $26.25 per hour, respectively.[11]  In total then, the Court believes plaintiff is owed $46,200.00.  Plaintiff, however, calculates his damages to be $44,737.50.  (Mem. at 12; Damages Calculation, ECF No. 13-5).  The Court believes this to be a typographical error based on the calculations <u>supra</u>, but because this is the amount that plaintiff requested, the Court recommends granting the amount plaintiff has requested in unpaid overtime wages: $44,737.50.

   B.  <u>Liquidated Damages</u>

   In addition to compensatory damages, plaintiff seeks liquidated damages pursuant to both federal and state law.  <u>See</u> 29 U.S.C. § 216(b); N.Y. Lab. L. § 663(1).  Plaintiff claims he is entitled to liquidated damages at the rate of 100% under the FLSA and 100% under the NYLL for the entire period, amounting to a total of $89,475.00 in liquidated damages on those unpaid wages and overtime.  (Pl.'s Damages Calculation, ECF No. 13-5; Mem. at 13).

   Under the FLSA, an employer who fails to pay his or her employees the minimum wage or overtime compensation required by Sections 206 and 207 is "liable to the employee . . . affected in the amount of [his or her] unpaid minimum wages, or [his or her] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages," 29 U.S.C. § 216(b),

---

   [11] As explained above, plaintiff's hourly rate was $16.25 per hour, making his overtime rate, $24.375 ($16.25 x 1.5). He worked 20 hours of overtime per week, meaning he is owed $24.375 x 20 = $487.50 per week in overtime wages. As alleged by plaintiff, he worked from May 1, 2015 to August 15, 2016 at this rate, meaning he worked for 70 weeks being underpaid by $487.50 per week, for a total underpayment during that period of $34,125.00 ($487.50 x 70). From August 17, 2016 to January 31, 2017, plaintiff worked 23 weeks, without being paid overtime in the amount of $26.25 per hour ($17.5 x 1.5) for the 20 hours of overtime he worked each week, for a total of $525.00 per week ($26.25 x 20). Thus, for that period, he is owed $12,075 ($525 x 23 weeks).

unless the employer can demonstrate that he or she acted in good faith and had reasonable grounds for believing that the act or omission in proper payment was not a violation of the FLSA.  Jemine v. Dennis, 901 F. Supp. 2d 365, 388 (E.D.N.Y. 2012) (citing 29 U.S.C. §§ 216(b), 260).  This award serves as "compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation of the FLSA."  Id. (quoting Herman v. RSR Secs. Servs., Ltd., 172 F. 3d 132, 141-42 (2d Cir. 1999)).  Defendants have defaulted and therefore have not met their statutory burden of demonstrating that they acted in good faith in failing to pay overtime to plaintiff; thus, the Court finds that plaintiff is entitled to an award of liquidated damages under the FLSA or the NYLL.  However, plaintiff is not entitled to an award of liquidated damages under both.  Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018) ("[w]e therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct").

Accordingly, the Court recommends awarding plaintiff an additional $44,737.50 in liquidated damages.

### C.  Statutory Damages for Wage Notice Violations

Plaintiff also alleges that defendants never provided him with annual notice of his wages, or a wage statement, as required by NYLL §§ 195(1), 195(3).  (Mem. at 15; Compl. ¶¶ 55, 59-61, 110; Lopez Decl. ¶¶ 19-21).  Section 195(3) requires that every employer provide to his or her employees "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked. N.Y. Lab. L. § 195(3).  In addition, an employee can recover $250.00 for each workday that the employer was in violation of Section 195(3), up to a statutory maximum of $5,000.00.  See N.Y.

Lab. L. § 198(1-d).  "This wage notice requirement went into effect on April 9, 2011, and permits recovery of $50 per workday to a maximum of $5,000.  Also, since April 9, 2011, the NYLL has required that employers furnish a wage statement every pay period.   N.Y. Lab. Law § 195(3). The NYLL permits recovery of $250 per workday to a maximum of $5,000.  N.Y. Lab. Law § 198(1-d)."  Sajvin v. Singh Farm Corp., No. 17 CV 4032, 2018 WL 4214335, at *7 (E.D.N.Y. Aug. 13, 2018), report and recommendation adopted, 2018 WL 4211300 (E.D.N.Y. Sept. 4, 2018).  Although both of these provisions originally permitted only $100 per week with a cap of $2,500, they were both amended allow for an award of up to $5,000 for violations after February 27, 2015, N.Y. Lab. Law § 198(1-d), months before plaintiff first began work for defendant.  (Id. at n. 5, 6).  Since plaintiff began working in May 2015 and worked for more than the minimum number days required, he is entitled to receive an additional $5,000 for each of these statutory violations, representing a penalty for defendants' violation of these sections.

D.   Attorney's Fees

With respect to attorney's fees, the information provided to the Court lists $6,384 as the total due to the attorneys, including costs.  (ECF No. 13-4).  However, those fees were calculated before much of the litigation in this case – back in 2017.  As such, the Court recommends that plaintiff's counsel be given 30 days to update her motion for fees.

CONCLUSION

Accordingly, the Court respectfully recommends that a default enter and that plaintiff's motion for default judgment be granted, awarding plaintiff $99,475.00 in damages, which includes $44,737.50 in compensatory damages, $44,737.50 in liquidated damages, and $10,000.00 for statutory violations.  However, before the Court considers an award of fees and costs, the undersigned recommends that plaintiff be provided an opportunity to submit

supplemental attorney's fee calculations and costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
August 11, 2021

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York

15